# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHRISTINE PEARSON,<br><br>        *Appellant*,<br><br>v.<br><br>BANK OF AMERICA,<br><br>        *Appellee*. | No. 3:12–cv–00013<br><br>MEMORANDUM OPINION<br><br>Judge Norman K. Moon |

This matter is before the Court on appeal of a final decision of the United States Bankruptcy Court for the Western District of Virginia, by which Appellant's Motion for Default Judgment was denied. Oral argument has not been requested, and pursuant to the Bankruptcy Briefing Notice (docket no. 3), I will decide the matter on the submissions. For the reasons explained below, I will affirm the bankruptcy court's decision.

### I. BACKGROUND

On March 3, 2011, Christine Ford Pearson ("Pearson" or "Appellant") filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Virginia. In the schedules filed with Pearson's bankruptcy petition, two secured debts were listed in favor of Bank of America ("Appellee"), the first for a mortgage account in the amount of $127,501.00 (the "Mortgage"), and the second for a home equity line of credit for $30,604.00 (the "HELOC"). On or about March 3, 2011, Pearson filed a Statement of Intention, in which she surrendered her residence that secured both the Mortgage and the HELOC.

On April 27, 2011, pursuant to 11 U.S.C. § 524, Pearson was granted a discharge of all of her dischargeable debts, including the debts owed to Bank of America. By statute, this discharge operated as an injunction against certain acts to recover debts as personal liabilities of Pearson. Even though Pearson's debt was discharged, on or about July 5, she received a statement and escrow account review (the "Mortgage Statement") from Bank of America regarding the discharged Mortgage, and sometime after July 31, received another letter from Bank of America (the "HELOC Statement") pertaining to her line of credit. According to Pearson, these letters violated the discharge injunction, and thus prompted her Complaint in the bankruptcy court.

The precise contents of Pearson's statements comprise the entire basis of her Complaint, and I will therefore quote the statements extensively. Page 1 of the HELOC Statement includes three distinct portions—the top, middle, and bottom. The top portion provides:

**FOR INFORMATIONAL PURPOSES**

**IMPORTANT NOTICE**[1]

If you do not want us to send you monthly statements in the future, please contact us at 1.800.669.5224.

This statement is being furnished to you for informational purposes only. It should not be construed as an attempt to collect a debt against you personally. Our records reflect that you are presently a debtor in an active bankruptcy case or you previously received a discharge in bankruptcy. Although your legal obligation to repay the loan was discharged or may be discharged in the future, we retain our security interest in the property securing the loan, as well as the right to proceed against the property (such as by foreclosure) in the event of a default under the loan documents.

This is not a statement of the amount necessary to pay off or reinstate the loan. To receive information about options for this loan, please contact us at 1.800.669.5224.

---

[1] The "**IMPORTANT NOTICE**" provision is set off from the preceding "**FOR INFORMATION PURPOSES**" provision by an entire line of bullet points.

2

Compl. Ex. B.  The middle portion, then, is labeled an "**ACCOUNT SUMMARY**," and provides details regarding the HELOC account, including the available line of credit, daily balance, interest rates, and finance charge.  *Id.*  A "Minimum payment due: 08/25/2011" is listed in the amount of "$1,233.19."  *Id.*  The bottom portion, after giving notice that calls may be monitored and describing a fee for returned or rejected payments, explains "**HOW TO MAKE A PAYMENT**," and informs the recipient how to make out checks, and where to send them.  *Id.*  On Page 2 of the HELOC Statement, below a "**TRANSACTION DETAILS**" heading, the charges affecting the HELOC are explained.  *Id.*  A "PREVIOUS BALANCE" is listed as "$31,748.45," a "LATE CHARGE FOR 06/2011 PMT" is listed as "$4.09," and a "PERIODIC FINANCE CHARGE" is listed as "$84.48."  *Id.*  The next section explains how finance charges are calculated, and what to do in case the statement contains errors.  *Id.*  The final section of the HELOC Statement provides contact information for Bank of America, and describes the process by which Bank of America will post any payments made.  *Id.*

The first page of the Mortgage Statement also contains top, middle, and bottom portions.  The top portion reads:

> **FOR INFORMATION PURPOSES**
>
> **IMPORTANT NOTICE**[2]
>
> **The Details of this Special Notice:**  We appreciate the opportunity to service your loan, value our relationship with you and are always looking for ways to increase customer satisfaction.  The purpose of this notice is to clarify for you why we are providing this special notice and to let you know that it will appear in all future monthly statements you receive.  If you don't want us to send you monthly statements in the future, please call us at 1.866.653.6183.
>
> **The Impact of the Bankruptcy:**  Our records indicate that in the past you received a discharge of this debt in a bankruptcy case.  Section 524 of the Bankruptcy Code tells us the discharge of this debt means you have no personal

---

[2] The "**IMPORTANT NOTICE**" provision is set off from the preceding "**FOR INFORMATION PURPOSES**" provision by a line of bullet points; each section thereafter is separated by a solid line.

3

obligation to repay it. The discharge also protects you from any efforts by anyone to collect this discharged debt as a personal liability of the debtor. You cannot be pressured to repay this debt. On the other hand, the security agreement allows foreclosure if the requirements under the loan documents are not met. We also need to tell you that this collection is from a debt collector. This quick summary is not intended as legal advice. You should consult with your own advisors if you have legal questions about your rights.

**Payment Details:** We received a number of calls from homeowners disturbed that they were receiving this message, as their bankruptcy occurred some time ago. Others called asking for detailed information about the home loan. Therefore, we are providing detailed loan information as a courtesy to you. This is not an attempt to collect a debt that has been discharged. This is not a demand for payment. The coupon below and the envelope are provided as a courtesy to you.

The loan documents provide that if we do not receive the next scheduled home loan payment by 8/16/2011, the loan may be assessed a late charge of $41.51.

If you would like to receive more information, including options such as how to pay electronically and stop receiving paper monthly statements, please contact us at 1.866.653.6183. Thank you for your business and we look forward to serving you in the coming years.

Compl. Ex. A. The middle portion, next, indicates a balance. Adjacent to a "**HOME LOAN SUMMARY**" heading is a table labeled "Home loan overview as of 07/05/2011" with a "Principal Balance" listed in the amount of "$127,501.66," and an "Escrow balance" listed in the amount of "–$1,087.64." *Id.* The bottom portion, after giving notice that calls may be monitored and describing a fee for returned or rejected payments, provides express "**PAYMENT INSTRUCTIONS**," informing the recipient how to make out checks and where to send them. *Id.* At the right side of the bottom portion, the document sets out a date, "08/01/2011," next to which is a "$948.71" figure.

On the following page, next to a "**HOME LOAN DETAILS**" heading, is a listing of relevant homeowners' fees, including "**Total monthly home loan payment**" listed in the amount of "$948.71." *Id.* It also includes a table indicating amounts due for "Homeowners

4

insurance" listed in the amount of "$580.00" and due "5/31/2011," and semi-annual "County taxes," listed as "$435.50" and due "11/01/2011." *Id.* The bottom of Page 2 provides contact information for Bank of America, and describes the process by which Bank of America will post any payments made. *Id.* The next three sections of the Mortgage Statement explain how escrow payments are calculated. *Id.* Beside a "**SUMMARY**" heading on Page 3, a row labeled "**New monthly escrow payment**" is listed in the amount of "$131.63," and another row labeled "**New monthly home loan payment effective 09/2011**" is listed in the amount of "$961.83." *Id.* The remainder of the Mortgage Statement contains the transaction history of Pearson's escrow account. *Id.*

In her Complaint before the bankruptcy court, Pearson claimed that Bank of America willfully violated the discharge injunction entered in Pearson's bankruptcy case pursuant to 11 U.S.C. § 524, and that such violation constituted contempt of the bankruptcy court's orders. In sum, Pearson alleged that, by sending the above-referenced statements, Bank of America sought to collect on debts after they had been lawfully discharged, and that such attempts violated the discharge injunction.

Bank of America failed to respond to the Complaint, and the clerk entered default. Pearson then sought default judgment, but the bankruptcy court found that "there is nothing in the language of the Letters that could possibly be construed as an attempt to collect the Debt as a personal liability of the Plaintiff," and issued judgment in favor of Bank of America. The instant appeal followed. Despite defaulting before the bankruptcy court, Appellee did file a brief with this Court on April 27, 2012, in which it argued that the statements did not constitute attempts to collect from Pearson, but instead served as informational courtesies. Br. of Appellee 8.

## II. STANDARD OF REVIEW

A district court reviewing a final decision of a bankruptcy court must evaluate the bankruptcy court's "findings of fact for clear error and its legal conclusions de novo." *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir. 2001) (quoting *Deutchman v. IRS*, 192 F.3d 457, 459 (4th Cir. 1999)).

## III. DISCUSSION

Section 524(a)(2) of the Bankruptcy Code provides that a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). While there exists no private right of action for a violation of § 524(a)(2), *Curtis v. LaSalle Nat'l Bank (In re Curtis)*, 322 B.R. 470, 484 n.17 (Bankr. D. Mass. 2005), § 105 of the Bankruptcy Code authorizes a bankruptcy court to hold a party in civil contempt for violating a previous order, *see Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir. 1989), including a discharge order, *see In re Barbour*, 77 B.R. 530, 532 (Bankr. E.D.N.C. 1987).

A party seeking to hold another in contempt for violating a discharge order has the burden of showing that there was a violation, and that the violation was willful. *See Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 187 (Bankr. E.D.N.C. 1987). The willfulness inquiry, in the context of the violation of a discharge order, is similar to the willfulness inquiry in the context of a violation of the automatic stay provision of 11 U.S.C. § 362. *Id.* Cases have established that a creditor willfully violates an automatic stay merely by committing an intentional act with knowledge of the automatic stay. *Id.* at 188 (citations omitted). Thus, to demonstrate willfulness in the context of a discharge injunction, a plaintiff must show that a

6

creditor committed an intentional act with knowledge of the discharge injunction. And to demonstrate that a *violation* of the discharge injunction occurred, a plaintiff must show that a creditor's "actions constitute[] an 'act . . . to collect . . . [the mortgage loan] as a personal liability of the debtor." *Kreeger v. U.S. Bank, N.A. (In re Kreeger)*, 2001 Bankr. LEXIS 2193, at *10–11 (Bankr. W.D. Va. 2001) (alterations in original) (quoting 11 U.S.C. § 524(a)(2)).

Pulling the above requirements together, then, Appellant must demonstrate that Bank of America sent one (or both) of the relevant statements with knowledge of the discharge injunction, and that one (or both) of these statements constituted an attempt to collect a debt as a personal liability of the Appellant. It appears to be true—and it has not been disputed—that Bank of America was included as a creditor on Appellant's schedule and mailing matrix, and thus Bank of America knew that Appellant had filed for bankruptcy. The sending of the statements was also undoubtedly intentional, so the critical inquiry becomes whether either of the letters represents a violation of the discharge injunction.

Appellant submits that the statements sent by Bank of America demanded payment of debts that were discharged in their Chapter 7 bankruptcies. Specifically, Pearson claims that her statements:

> (1) demanded payment; (2) claimed the principal balance was owed by Pearson on each loan; (3) required that checks be made payable to Bank of America, N.A.; and (4) included the address to which the payment was to be sent. In addition, the Mortgage Statement: (1) explained that "[a]ll accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal [and] interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan;"; and (2) stated that "this communication is from a debt collector." Finally, the HELOC Statement admits that it is for a "Post-Petition Billing Cycle/Statement Period 07/01/2011–07/31/2011."

7

Br. of Appellant 5–6.

By discussing only the foregoing provisions of their respective statements, however, Appellant ignores other significant portions thereof. Pearson's HELOC Statement informs her that the letter "should not be construed as an attempt to collect against [her] personally." It also assures Pearson that Appellee's records "reflect that [she] is presently a debtor in an active bankruptcy case or [she] previously received a discharge in bankruptcy." This information is all contained on the center of Page 1 of the HELOC Statement. Additionally, the fact that the BAC Statement is intended "**FOR INFORMATIONAL PURPOSES**" is apparent not only from the fact that the such words are bolded, capitalized, underlined, and centered at the top of Page 1, but also from the fact that these exact words are included again in the second sentence of the statement itself.

When it comes to Pearson's Mortgage Statement, the language in the opening section clearly states that Pearson's loans had been discharged, that such discharge insulated Pearson "from any efforts by anyone to collect this discharged debt as a personal liability," and that Pearson "cannot be pressured to pay this debt." Moreover, the Mortgage Statement's opening section references the fact that some homeowners became concerned after receiving statements, and therefore assured Pearson that such letters are sent as a courtesy, and "are not a demand for payment."

In these ways, the instant case differs significantly from *Harlan v. Rosenberg & Associates (In re Harlan)*, 402 B.R. 703 (Bankr. W.D. Va. 2009) and *Curtis v. LaSalle National Bank (In re Curtis)*, 322 B.R. 470 (Bankr. D. Mass. 2005), both of which Appellant discusses in her Brief. The statement at issue in *Curtis* contained a notification that, "if your loan was in bankruptcy, this letter is for notification purposes only," and that, if the "repayment obligations

8

have been discharged in a Chapter 7 case, this is not an attempt to impose personal liability on you." 322 B.R. at 484 n.18. Importantly, however, the *Curtis* notification was "[o]n the backside of the first page of the . . . letter, and without the capital letters and bold print employed for other sections of the letter . . . ." *Id.* Similarly, in *Harlan*, "[t]he lone indication that [the lender] was only attempting to enforce its in rem rights is embedded in regular font in the middle of the second paragraph . . . ." 402 B.R. at 707.

Additionally, as United States Bankruptcy Judge Anderson observed, the statements at issue in this appeal "provide that no monthly statement would be sent in the future if the [Appellant] would simply make one toll-free telephone call" to a number that was supplied. *Pearson v. Bank of America (In re Pearson)*, Case No. 11–60579 (Bankr. W.D. Va. Jan 27, 2012). While these statements do indeed provide principal balances, estimated payments, payment instructions, information on how Bank of America will post any payments made, and other remarks that could surely be construed, by themselves, as attempts to collect an already-discharged debt, I find that those portions of the statements, when viewed in conjunction with the other advisements I have already discussed, do not represent a violation of the discharge injunction under § 524(a).

## IV. CONCLUSION

For the reasons I have explained, I will affirm the decisions below and hold that the statements that Appellee sent to Appellant do not constitute violations of the discharge injunction.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this __10th__ day of July, 2012.

9

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE